UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERII TURKIN,

        Plaintiff,

v.

JORDAN WOODSIDE and
CITY OF SOUTHFIELD,

        Defendants.

Case No.
Hon.

---

A. VINCE COLELLA (P49747)
ELENA T. KAATZ (P85501)
**MOSS & COLELLA, P.C.**
Attorneys for Plaintiff
28411 Northwestern Hwy, Ste 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other pending or resolved
civil action arising out of the transaction or
occurrence alleged in this Complaint.

    /s/ A. Vince Colella
    A. Vince Colella (P49747)

NOW COMES Plaintiff, VALERII TURKIN, by and through his attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and for his Complaint and Demand for Jury Trial, states as follows:

1

## PRELIMINARY STATEMENT

1. This is a civil rights action for damages brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, the Fourth and Fourteenth Amendments to the United States Constitution, and related state law claims against:

a. Defendant JORDAN WOODSIDE, a police officer for the City of Southfield Police Department, for his use of excessive and unreasonable force which caused catastrophic spinal and neurological injuries to Plaintiff VALERII TURKIN, brought against him in his individual capacity; and

b. Defendant CITY OF SOUTHFIELD for its unconstitutional policies, practices, and procedures regarding officer training and discipline in use-of-force incidents, which were a moving force in causing serious and likely permanent injuries and damages to Plaintiff VALERII TURKIN.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, VALERII TURKIN ("TURKIN") is a resident of the County of Oakland, State of Michigan, within the geographical boundaries of the Eastern District of Michigan.

3. Upon information and belief, Defendant JORDAN WOODSIDE ("WOODSIDE") is a resident of the State of Michigan, and at all relevant times was employed as a police officer with the City of Southfield Police Department. At all

2

material times, Defendant WOODSIDE was acting under color of state law and within the scope of his employment as a police officer.

4. Defendant, CITY OF SOUTHFIELD, is a municipal corporation which, pursuant to its lawful authority, operates the City of Southfield Police Department. At all material times, Defendant CITY OF SOUTHFIELD and its police department were acting under the color of state law. Defendant CITY OF SOUTHFIELD is located entirely within the geographical boundaries of the Eastern District of Michigan, Southern Division.

5. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy as Plaintiff's federal claims.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred within the Eastern District of Michigan, Southern Division.

8. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

## FACTUAL ALLEGATIONS

9. On July 5, 2024, at approximately 2:38 p.m., TURKIN was involved in a multi-vehicle rear-end collision while traveling westbound on Twelve Mile Road at the intersection of Inkster Road in Southfield, Michigan.

10. According to the Southfield Police Department Crash Report, TURKIN's vehicle rear-ended another vehicle, which then struck a third vehicle that was stopped at a red light at the intersection.

11. Shortly after the accident, officers from the CITY OF SOUTHFIELD Police Department, including Defendant WOODSIDE, arrived at the scene to investigate.

12. WOODSIDE approached TURKIN, who was seated in his vehicle with the passenger door partially open.

13. Upon making contact with TURKIN, WOODSIDE began questioning him about his identification and contact information.

14. TURKIN is a native Russian speaker with limited English proficiency, which created a significant language barrier between him and WOODSIDE. This language barrier is clearly evident in the Southfield Police Department body-worn camera footage capturing the incident.

4

15. Despite TURKIN's limited English proficiency and the absence of any threatening behavior, WOODSIDE rapidly escalated the encounter by attempting to place TURKIN in handcuffs while continuing to interrogate him.

16. At no point did TURKIN physically resist arrest, attempt to flee, or pose any threat to WOODSIDE's safety or that of others on the scene.

17. Without reasonable justification or provocation, WOODSIDE abruptly grabbed TURKIN from behind, physically lifted him off his feet, and violently slammed him headfirst onto the ground.

18. The force of the impact was so severe that Southfield emergency medical responders at the scene reported hearing what sounded like a "pop" coming from TURKIN's neck.

19. After body-slamming TURKIN to the ground, WOODSIDE continued to apply downward pressure and force upon TURKIN's body while lying face down on the ground, unresponsive.

20. Despite TURKIN's obvious incapacitation and unresponsiveness, WOODSIDE proceeded to tightly secure handcuffs around TURKIN's wrists.

21. TURKIN remained completely unresponsive to verbal commands and physical stimuli following WOODSIDE's use of force, prompting Southfield Fire Department personnel to apply a cervical collar and evacuate him from the scene by gurney.

22. During transport to Ascension Providence Hospital, paramedics documented that TURKIN's "pupils were constricted," he began to "breath[e] agonal," and his "pulse became hard to find" - all signs of life-threatening neurological trauma.

23. Upon arrival at the emergency department of Ascension Providence Southfield Hospital on July 5, 2024, TURKIN was unresponsive and exhibited no movement in his arms or legs, indicating severe spinal cord injury.

24. TURKIN's critical condition necessitated hospitalization for a total of eighteen (18) days, from July 5, 2024, through July 23, 2024.

25. Diagnostic imaging and medical evaluation revealed that TURKIN had suffered multiple severe traumatic injuries, including:

    a.    Epidural hematoma in the cervical vertebrae (bleeding in this space between the dura mater and the vertebral bones);

    b.    Fracture of the C4 vertebra;

    c.    Bilateral fractures of the C3 lamina and spinous process with spinal cord signal changes, indicating spinal cord compression and damage;

    d.    Bilateral vertebral artery dissections at the level of C4, which presented an immediate risk of stroke; and

    e.    Fracture of the T1 superior endplate.

26. Due to the severity and life-threatening nature of his injuries, TURKIN underwent emergency surgery on July 5, 2024 - a C3-4 anterior cervical discectomy and fusion with C4 partial corpectomy, a complex spinal procedure necessary to decompress the spinal cord and stabilize the fractured vertebrae.

27. Following surgery, TURKIN's condition required seven (7) days of treatment in the Intensive Care Unit, followed by an additional ten (10) days of inpatient hospitalization and extensive inpatient 24-hour monitoring, care, recovery and rehabilitation.

28. As a direct and proximate result of WOODSIDE's unreasonable and excessive use of force, TURKIN suffered catastrophic physical injuries that have caused him permanent disability, ongoing pain and suffering, substantial medical expenses, loss of quality of life, and emotional trauma.

## COUNT I:
## FOURTH AMENDMENT VIOLATION - EXCESSIVE FORCE
## AGAINST DEFENDANT JORDAN WOODSIDE (42 U.S.C. § 1983)

29. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

30. At all relevant times, Defendant WOODSIDE was acting under color of state law as a police officer employed by the CITY OF SOUTHFIELD Police Department.

31. The Fourth Amendment to the United States Constitution, enforceable against Defendant WOODSIDE through 42 U.S.C. § 1983, guarantees citizens the right to be free from unreasonable searches and seizures, including the right to be free from excessive force during police encounters and arrests.

32. Based on clearly established law at the time of this incident, any reasonable officer would have known that using the level of force employed by WOODSIDE against a non-resisting individual with limited English proficiency following a traffic accident was objectively unreasonable and constituted excessive force in violation of the Fourth Amendment.

33. The force used by WOODSIDE was objectively unreasonable under the totality of the circumstances because:

   a. TURKIN posed no immediate threat to the safety of WOODSIDE or others;

   b. TURKIN was not actively resisting arrest or attempting to evade arrest by flight;

   c. The severity of any suspected crime i.e. traffic accident and suspicion of intoxication, did not justify the extreme level of force used;

   d. WOODSIDE failed to account for TURKIN's limited English proficiency and the resulting communication barriers;

   e. WOODSIDE failed to utilize de-escalation techniques or less forceful alternatives; and

   f. The body-slam maneuver executed by WOODSIDE created a substantial risk of serious injury that was disproportionate to any legitimate law enforcement objective.

34. WOODSIDE's actions were intentional, willful, and in reckless disregard of TURKIN's clearly established constitutional rights.

35. As a direct and proximate result of WOODSIDE's unconstitutional conduct, TURKIN suffered catastrophic physical injuries requiring emergency surgery, prolonged hospitalization, and likely permanent disability, as well as extreme physical pain, emotional distress, psychological trauma, loss of enjoyment of life, and substantial economic damages including past and future medical expenses.

## COUNT II:
## MUNICIPAL LIABILITY (MONELL)
## AGAINST DEFENDANT CITY OF SOUTHFIELD

36. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

37. At all relevant times, Defendant CITY OF SOUTHFIELD was responsible for the policies, practices, procedures, training, and supervision of the CITY OF SOUTHFIELD Police Department and its officers, including Defendant WOODSIDE.

38. Defendant CITY OF SOUTHFIELD developed and maintained policies, practices, and customs exhibiting deliberate indifference to the constitutional rights of persons within its jurisdiction, which caused the violation of TURKIN's rights.

39. Defendant CITY OF SOUTHFIELD's policies, practices, and customs that were the moving force behind the constitutional violations suffered by TURKIN include, but are not limited to:

   a. Failing to properly train officers on the constitutional limitations on the use of force, particularly when dealing with individuals with limited English proficiency or communication barriers;

   b. Failing to properly train officers on appropriate takedown techniques and the risks associated with body-slam maneuvers that could cause catastrophic cervical and spinal injuries;

   c. Adopting, implementing, teaching and/or training officers in the use of violent, dangerous and unconstitutional assaultive tactics while detaining or apprehending non-violent compliant subjects.

   d. Failing to properly train officers on de-escalation techniques when encountering non-threatening individuals at accident scenes;

   e. Failing to adequately supervise officers who exhibit a pattern of using excessive force;

   f. Failing to adequately investigate incidents involving the use of force by officers;

   g. Failing to appropriately discipline officers who use excessive force; and

   h. Tacitly approving of and ratifying the use of excessive force by officers by failing to adequately investigate and discipline officers who engage in such conduct.

40. These policies, practices, and customs constituted deliberate indifference to the safety and constitutional rights of the public, including TURKIN, and were the moving force behind, and direct and proximate cause of, the constitutional violations and injuries suffered by TURKIN, as alleged herein.

41. The CITY OF SOUTHFIELD had actual or constructive knowledge that its officers, including WOODSIDE, were inadequately trained, supervised, and disciplined, creating a substantial risk that constitutional violations, including the use of excessive force, would occur.

42. Despite this knowledge, the CITY OF SOUTHFIELD failed to take reasonable measures to properly train, supervise, and discipline its officers, thereby tacitly authorizing and ratifying the unconstitutional conduct that occurred in this case.

43. As a direct and proximate result of the CITY OF SOUTHFIELD's unconstitutional policies, practices, and customs, TURKIN suffered catastrophic physical injuries requiring emergency surgery, prolonged hospitalization, and likely permanent disability, as well as extreme physical pain, emotional distress, psychological trauma, loss of enjoyment of life, and substantial economic damages including past and future medical expenses.

## COUNT III: ASSAULT AND BATTERY AGAINST DEFENDANT JORDAN WOODSIDE (STATE LAW CLAIM)

44. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

45. Under Michigan law, assault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt.

46. Battery is defined under Michigan law as the willful and harmful or offensive touching of another person which results from an act intended to cause such contact.

47. At the time WOODSIDE grabbed TURKIN from behind and lifted him off his feet, WOODSIDE committed an assault by creating in TURKIN a reasonable apprehension of an immediate harmful or offensive contact.

48. When WOODSIDE proceeded to body-slam TURKIN headfirst onto the ground, WOODSIDE committed a battery by intentionally causing harmful and offensive contact with TURKIN's person.

49. WOODSIDE's use of physical force against TURKIN was excessive, unreasonable, and unjustified under the circumstances, as TURKIN posed no threat to WOODSIDE or others and was not actively resisting.

50. WOODSIDE knew or should have known that his actions would cause severe injury to TURKIN, and his conduct did in fact cause catastrophic injuries to TURKIN.

51. WOODSIDE's actions were intentional, willful, wanton, and in reckless disregard of TURKIN's physical safety.

52. As a direct and proximate result of WOODSIDE's assault and battery, TURKIN suffered catastrophic physical injuries requiring emergency surgery, prolonged hospitalization, and likely permanent disability, as well as extreme physical pain, emotional distress, psychological trauma, loss of enjoyment of life, and substantial economic damages including past and future medical expenses.

## COUNT IV:
## GROSS NEGLIGENCE AGAINST DEFENDANT JORDAN WOODSIDE
## (STATE LAW CLAIM)

53. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54. At all material times, Defendant WOODSIDE, as a City of Southfield police officer, owed a duty to all persons, including Plaintiff TURKIN, to avoid conduct so reckless as to demonstrate a substantial lack of concern for whether injury would result.

55. Under Michigan law, gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(8)(a).

56. WOODSIDE was grossly negligent in breaching the duties owed to TURKIN in one or more of the following ways:

13

    a.    Body-slamming TURKIN to the ground on his head/neck when WOODSIDE knew or should have known that TURKIN was not an imminent or immediate threat;

    b.    Using excessive and unreasonable force against TURKIN who did not pose a physical threat to WOODSIDE or others;

    c.    Failing to account for TURKIN's limited English proficiency in determining how to appropriately interact with him;

    d.    Failing to utilize less dangerous control techniques when attempting to restrain TURKIN;

    e.    Continuing to apply force to TURKIN even after he was clearly incapacitated and unresponsive; and

    f.    Acting with reckless disregard for TURKIN's physical safety under circumstances that posed a substantial risk of serious injury and/or death.

57. WOODSIDE's conduct was so reckless as to demonstrate a substantial lack of concern for whether injury would result, constituting gross negligence under Michigan law.

58. As a direct and proximate result of WOODSIDE's gross negligence, TURKIN suffered catastrophic physical injuries requiring emergency surgery, prolonged hospitalization, and likely permanent disability, as well as extreme physical pain, emotional distress, psychological trauma, loss of enjoyment of life, and substantial economic damages including past and future medical expenses.

# COUNT V:
## CLAIM FOR REASONABLE COSTS, DISBURSEMENTS AND ATTORNEY FEES PURSUANT TO 42 U.S.C. § 1988

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Defendants CITY OF SOUTHFIELD and WOODSIDE caused actual deprivation of Plaintiff TURKIN's civil rights under color of law in violation of 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

61. As a result of these violations, TURKIN has been forced to bring this action to vindicate his constitutional rights.

62. Pursuant to 42 U.S.C. § 1988, TURKIN is entitled to recover reasonable attorney fees, litigation expenses, and costs from Defendants.

## DAMAGES

63. As a direct and proximate result of Defendants' unlawful actions, Plaintiff TURKIN has suffered:

    a.    Severe physical injuries, including but not limited to: epidural hematoma in the cervical vertebrae, fracture of the C4 vertebra; bilateral fractures of the C3 lamina and spinous process with spinal cord signal changes; bilateral vertebral artery dissections at the level of C4; and fracture of the T1 superior endplate

    b.    The need for emergency surgical intervention, including C3-4 anterior cervical discectomy and fusion with C4 partial corpectomy;

    c.    Physical pain and suffering; permanent disability and limitation of physical function;

   d. Severe emotional distress and psychological trauma;

   e. Loss of enjoyment of life and normal activities;

   f. Past and present medical expenses exceeding $250,000.00

   g. Future medical expenses for ongoing care and rehabilitation;

   h. Loss of earning capacity; and

   i. Other damages to be determined at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff VALERII TURKIN respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, and award the following relief:

   A. Compensatory damages in excess of Seventy-Five Thousand ($75,000.00) Dollars;

   B. Punitive damages against Defendant WOODSIDE in his individual capacity;

   C. Exemplary damages as allowed by state law;

   D. Reasonable attorney fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988;

   E. Pre-judgment and post-judgment interest as allowed by law; and

   F. Such other relief as this Honorable Court deems just and equitable.

16

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MOSS & COLELLA, P.C. |
|  | BY: /s/ A. Vince Colella<br>A. VINCE COLELLA (P49747)<br>Attorney for Plaintiff<br>28411 Northwestern Hwy, Suite 1150<br>Southfield, MI 48034<br>(248)-945-0100 / F: (248) 945-1801 |
| DATED: April 16, 2025 | vcolella@mosscolella.com |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERII TURKIN,

      Plaintiff,

v.

JORDAN WOODSIDE and
CITY OF SOUTHFIELD,

      Defendants.

Case No.
Hon.

---

A. VINCE COLELLA (P49747)
ELENA T. KAATZ (P85501)
**MOSS & COLELLA, P.C.**
Attorneys for Plaintiff
28411 Northwestern Hwy, Ste 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, VALERII TURKIN, by and through his attoneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and hereby respectfully requests jury trial in the above captioned matter.

      Respectfully submitted,
      MOSS & COLELLA, P.C.

      BY: /s/ A. Vince Colella
      A. VINCE COLELLA (P49747)
      Attorney for Plaintiff
      28411 Northwestern Hwy, Suite 1150
      Southfield, MI 48034
      (248)-945-0100 / F: (248) 945-1801

DATED: April 16, 2025       vcolella@mosscolella.com